IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDNEY THEODORE SCARLETT, | Case No. 23-cv-06649-CRB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS AND DENYING PREFILING MOTION** |
| COUNTY OF SANTA CLARA, et al., | |
| Defendants. | |

Plaintiff Sidney Theodore Scarlett has sued the County of Santa Clara and a number of other defendants[1] in connection with his February 2015 arrest and subsequent criminal prosecution. See Compl. Defendants move to dismiss and move for a prefiling order deeming Scarlett a vexatious litigant. See MTD; Mot. re Vex. Litigant (dkt. 22). The Court has determined that these motions can be determined without oral argument. See Civil Local Rule 7-1(b). As explained below, the Court GRANTS the motion to dismiss and DENIES the prefiling motion.

## I.    BACKGROUND[2]

### A.    Factual Background

In 2014, Scarlett was fighting a foreclosure action involving his home of 32 years.

---

[1] The named Defendants are: County of Santa Clara, Santa Clara County Sheriff's Office, Jeffrey Francis Rosen, Charles Y. Huang, Amir Reza Alemzadeh, Molly O'Neal, and Howard Goldman. See Compl. (dkt. 1) at 1. Defendants assert that Amir Alem is erroneously sued as Amir Reza Alemzadeh and Gregory Howard Goldman is erroneously sued as Howard Goldman. MTD (dkt. 21) at 3 n.1.
[2] For the purposes of this order, the Court accepts as true the well-pled allegations in the complaint, and incorporates facts subject to judicial notice.

United States District Court
Northern District of California

See Compl. ¶ 73.  He removed his case to federal court and named a judge as a defendant in that federal case.  Id.  Less than six weeks later, on February 11, 2015, Scarlett was arrested at his home "on contrived charges that are a legal impossibility."  Id. ¶¶ 26, 74.  The arrest, conducted by Santa Clara Sheriff's deputies, was "more like a military assault carried out by a platoon size force brandishing military armament."  Id. ¶¶ 26, 38.  The officers refused to show Scarlett the warrant for his arrest.  Id. ¶ 40.  Scarlett's vital signs led officers to take him to the ER to get stabilized.  Id. ¶ 41.  He was then given a "rough ride" back to the county jail, chained to a chair for 5 hours in the booking area, refused a phone call, placed next to a flailing arrestee, and positioned underneath a cold air vent.  Id. ¶¶ 42–48.  An unknown female tried to inject him with an unknown substance, and then he was strip-searched and deprived of water.  Id. ¶¶ 49–51.

By the time Scarlett was released from jail, on February 14, 2015, "the entire contents of his home of 32 years had been removed and the home was boarded up."  Id. ¶ 26.  He then spent the next eight years "subjected to an unbelievable abuse of the criminal justice system orchestrated by county district attorney Defendant Jeffrey Francis Rosen."  Id. ¶ 52.  He was arraigned on February 13, 2015 on charges of violating California Penal Code §§ 115 (knowingly filing a false or forged instrument with a public office) and 419 (unlawfully returning to land from which he was previously lawfully removed).  RJN Ex. 1 (dkt. 21-1)[3] at 7.

Scarlett alleges that deputy district attorney Huang yelled in court that Scarlett was a terrorist and should be remanded because "he (Scarlett) is suing my client costing him money," falsely stated that Scarlett had been declared a vexatious litigant, met with a private attorney who was representing the person suing Scarlett, laughed in court when presented with evidence in court about Scarlett's heart attack, and demanded that the judge issue an arrest warrant if Scarlett did not appear for court, because, he argued, a doctor's

---

[3] All of the exhibits to the RJN appear together as one 466-page document on the same docket entry.  This makes it very difficult to navigate to different exhibits.  In the future, Defendants are advised to file each exhibit separately.

letter that Scarlett offered was vague.  Compl. ¶¶ 53–56.

Scarlett alleges that deputy district attorney Alem offered Scarlett a deal of no jail time if he would drop all civil litigation over his home and agree not to sue Huang's client, threatened him with six more felony counts if he mentioned the offer, refused to provide a witness list, refused to comply with written discovery demands, lied in court about whether he had been served with motion papers, met privately with the judge, and brought to the hearing three armed men in suits.  Id. ¶¶ 57, 59–62.

Scarlett alleges that the public defender's office failed to protect his constitutional rights and participated in the bad faith prosecution.  Id. ¶ 64.  Specifically, public defender Goldman followed Scarlett out of court one day after a hearing and, when Scarlett told him that he knew about meetings that were occurring behind his back, screamed, "WHY DON'T YOU HAVE ANOTHER HEART ATTACK AND DIE!!"  Id. ¶ 66.

There are not specific allegations as to district attorney Rosen or public defender O'Neal, other than that Rosen has the highest position in the district attorney's office, O'Neal has the highest position in the public defender's office, and the eight-year prosecution was "orchestrated" by Rosen.  Id. ¶¶ 17, 20, 52.  There are also various allegations against Doe defendants.  Id. ¶¶ 70–71.

Scarlett's criminal prosecution was dismissed "in the interest of justice" on December 2, 2022.  RJN Ex. 2 at 9; Compl. ¶ 6.

**B.    Previous Suits**

This is the sixth lawsuit Scarlett has brought about the events above.[4]

In Scarlet I (Scarlett v. County of Santa Clara, No. 16-cv-05418-LHK (N.D. Cal.)), Scarlett brought suit in September 2016 against a number of defendants, including the County, Rosen, and Huang, about 6215 Drifter Drive in San Jose, Scarlett's home.  See RJN Ex. 3 ¶ 6.  The complaint is very hard to follow.  The court held that "Plaintiff's allegations are legally and factually frivolous."  RJN Ex. 4 at 2.  Scarlett voluntarily

---

[4] See also Mot. re Vex. Litigant at 3–12 (detailing previous litigation).

1    dismissed the case.  RJN Ex. 5.

2         In <u>Scarlet II</u> (<u>Scarlett v. Rosen et al.</u>, No. 17-cv-05358-LHK (N.D. Cal.)), Scarlett

3    brought suit in September 2017 against Rosen and others, alleging that Rosen

4    "prosecut[ed]" him "for a non-crime," refused to produce discovery, arrested him without

5    a complaint, threatened him, and offered to reduce the charges against him if he agreed to

6    drop his civil suits and not sue about his house.  RJN Ex 7 at 7–8.  The court dismissed the

7    complaint without leave to amend.  RJN Ex. 8 at 1.  It concluded that "the complaint is

8    frivolous and fails to state a claim."  <u>Id.</u> at 2.  As to Rosen, the court explained that

9    "prosecutors are entitled to absolute immunity for actions that are 'intimately associated

10   with the judicial phase of the criminal process.'"  <u>Id.</u> at 5 (quoting <u>Imbler v. Pachtman</u>, 424

11   U.S. 409, 431 (1976)).  The Ninth Circuit concluded that Scarlett's appeal of that order

12   was frivolous.  RJN Ex. 9.

13        In <u>Scarlett III</u> (<u>Scarlett v. Alemzadeh</u>, No. 19-cv-07466-LHK (N.D. Cal.)), Scarlett

14   brought suit in November 2019 against Alem and various Does.  <u>See</u> RJN Ex. 10.  Scarlett

15   alleged that there was not a valid warrant for his arrest and that the defendants had not

16   produced <u>Brady</u> material.  <u>Id.</u> at 5.  Scarlett appealed the court's order continuing a case

17   management conference, <u>see</u> RJN Ex. 11, and the Ninth Circuit dismissed the appeal for

18   lack of jurisdiction, RJN Ex. 12.  The court then dismissed the complaint without

19   prejudice, holding that "<u>Younger</u> abstention requires the dismissal of Scarlett's claims for

20   injunctive and declaratory relief" because there were ongoing state judicial proceedings.

21   RJN Ex. 13.  The court explained that "[f]ollowing the final disposition of Scarlett's

22   California Criminal Action involving 'felony complaint C1503585' (including all appeals),

23   Scarlett may bring suit and seek relief for any alleged violations of his Fourth Amendment

24   and due process rights."  <u>Id.</u> at 10.  Scarlett appealed and the Ninth Circuit deemed the

25   appeal frivolous.  RJN Ex. 14.

26        In <u>Scarlett IV</u> (<u>Scarlett v. Goldman et al.</u>, No. 19CV360335 (Santa Clara Super.

27   Ct.)), Scarlett brought suit in December 2019 against Goldman and O'Neal and various

28   Does.  RJN Ex. 15.  Scarlett alleged that the defendants "refused to protect Plaintiff's

1    Constitutional Rights." Id. at 3.  The Superior Court sustained an unopposed demurrer,

2    holding that Scarlett failed to state a claim.  RJN Ex. 16 at 1.  The court gave Scarlett leave

3    to amend, id. at 2, but he failed to amend, resulting in a judgment of dismissal that the

4    Sixth Appellate District affirmed, see RJN Ex. 17.

5        In Scarlett V (Scarlett v. Rosen et al., No. 22-cv-05436-BLF (N.D. Cal.)), Scarlett

6    brought suit in September 2022 against Rosen, O'Neal, and others.  RJN Ex. 18.  Scarlett

7    referenced his February 11, 2015 arrest at 6215 Drifter Dr. in San Jose, which he deemed a

8    "false arrest," as well as the "8 years of malicious prosecution," a public defender yelling,

9    "WHY DON'T YOU HAVE ANOTHER HEART ATTACK AND DIE !!," the heart

10   attacks he had due to the stress of his case, "denial of due process," that "[t]he DA, judges,

11   county, and public defenders office all working in concert to convict on charges that were

12   brought in bad faith and are a legal impossibility." Id. at 3.  Judge DeMarchi

13   recommended in a report and recommendation (R&R) that the complaint be dismissed for

14   failure to "allege sufficient facts demonstrating that he has a plausible claim for relief."

15   RJN Ex. 19 at 8.  The R&R concluded that the claims against O'Neal were "exceedingly

16   vague" and "it is not apparent that . . . O'Neal acted under color of state law." Id. (citing

17   Polk Cty. v. Dodson, 454 U.S. 312, 325 (1981)).  The R&R further concluded that the

18   claims against Rosen "are barred by the doctrine of prosecutorial immunity." Id. at 10–11.

19   In December 2022, Judge Freeman adopted the R&R and dismissed the complaint without

20   leave to amend.  RJN Ex. 20.

21       **C.    Procedural History**

22       Scarlett submitted a claim against the County on May 25, 2023.  RJN Ex. 21.  The

23   claim stated that Scarlett "was subjected to a False Arrest on 2/11/2015 at his home of 32

24   years" and that the arrest "was the result of DA Rosen's office fabricating a crime from

25   Scarlett's exercising his constitutional rights, extort/threaten Scarlett to drop civil lawsuit

26   for his home." Id. at 1.  In June 2023, the County returned the claim without action,

27   stating that "the claim as to those allegations was not presented within six months after the

28   event or occurrence as required by law."  RJN Ex. 22 (citing Gov't Code §§ 901, 911.2).

United States District Court
Northern District of California

It stated that Scarlett's recourse was "to apply without delay to [the County] for leave to present a late claim."  Id. (citing Gov't Code §§ 911.4–912.2, 946.6).  There is no indication that he did so.

Scarlett brought this suit on December 28, 2023.  See Compl.  Although the caption of the complaint purports to bring nine claims,[5] the complaint itself only asserts four: (1) Fourth Amendment – Detention and Arrest, against Does; (2) First Amendment, against all Defendants; (3) False Arrest/Imprisonment under California Government Code §§ 815.2 and 820 and Cal. Const. Art. 1, section 13, against Does; and (4) Violation of the Bane Act, Cal. Civil Code § 52.1, against all Defendants, see id. ¶¶ 80–95.  Defendants have moved to dismiss and moved for a prefiling order deeming Scarlett a vexatious litigant.  See MTD; Mot. re Vex. Litigant.  Scarlett failed to oppose the motions, leading to an order to show cause and an extension of time.  See OSC (dkt. 28); see also Order Extending Order to Show Cause (dkt. 29); Order Vacating Hearings and Setting Status (dkt. 31).  The Court then gave Scarlett an additional extension of time to file his opposition briefs.  See Status Conference (dkt. 33).  Scarlett filed his opposition briefs, see Opp'n to MTD (dkt. 34); Opp'n to Mot. re Vex. Litigant (dkt. 35), and Defendants filed reply briefs, see Reply re MTD (dkt. 36); Reply re Mot. re Vex. Litigant (dkt. 37).  Scarlett then filed improper supplemental opposition briefs.  See Supp. Opp'n to MTD (dkt. 38); Supp. Opp'n to Mot. re Vex. Litigant; Civil Local Rule 7-3(d) ("Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval," save for two exceptions, neither of which apply here).[6]

## II.    LEGAL STANDARD

Two different legal standards are relevant to Defendants' two motions.

___

[5] The caption includes claims for (1) First Amendment Retaliation; (2) Fourth Amendment - Detention and Arrest; (3) Sixth Amendment – Extreme Delay; (4) Fourteenth Amendment – Substantive Due Process; (5) False Arrest/False Imprisonment; (6) Assault and Battery; (7) Violation of the Bane Act, Cal. Civil Code § 52.1; (8) Civil Conspiracy; and (9) Defamation.  See id. at 1.
[6] The Court will not consider these improper filings.

### A.    Motion to Dismiss

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a)(2).  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).  Nevertheless, the facts pleaded must make the claim "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While courts are to hold a complaint by a pro se plaintiff to a less stringent standard than one drafted by a lawyer, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), courts may not "supply essential elements of the claim that were not initially pled," Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

Following dismissal, a court "should liberally allow a party to amend its pleading." Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013).  However, it need not grant leave to amend "if amendment would be an exercise in futility." Leadsinger, Inc. v. BMG Music Publishing, 512 F.3d 522, 532 (9th Cir. 2008) (cleaned up).

### B.    Motion for Prefiling Order

District courts have the inherent power to enter prefiling orders against vexatious litigants. See 28 U.S.C. § 1651(a) (All Writs Act).  Prefiling orders are "extreme remed[ies] that should rarely be used." Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007).  However, "'[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.'" Id. (quoting De Long

1  v. Hennessey, 912 F.2d 1144, 1146 (9th Cir. 1990)).  Accordingly, district courts must

2  examine four factors before entering a prefiling order: (1) the litigant must be given notice

3  and an opportunity to be heard before a court enters a prefiling order; (2) the court must

4  compile an adequate record for review, including a list of all relevant cases and motions;

5  (3) the court must make substantive findings that the litigant's filings are frivolous or

6  harassing; and (4) the prefiling order must be narrowly tailored.  See De Long, 912 F.2d at

7  1147–48.

## III.    DISCUSSION

9  This order first addresses Defendants' motion to dismiss and then their motion for a

10  prefiling order.

### A.    Motion to Dismiss

12  Defendants move to dismiss the seven named defendants and the Doe defendants,

13  on a number of grounds.  Defendants argue that (1) the Santa Clara Sheriff's Office is not a

14  proper defendant; (2) the claims against Rosen, O'Neal, and Goldman are barred by res

15  judicata; (3) Scarlett fails to state a claim for First Amendment retaliation; (4) Scarlett fails

16  to state a claim under the Bane Act; (5) Scarlett's claims against the Doe defendants

17  should be dismissed; (6) Scarlett is not entitled to punitive damages against the County;

18  and (7) the Court should deny leave to amend.  See generally MTD.

### 1.    Santa Clara Sheriff's Office

20  Defendants argue that that the Court should dismiss the Santa Clara Sheriff's Office

21  because the County is the Sheriff's Office's "parent" entity and therefore legally the proper

22  defendant.  MTD at 13 (citing Williams v. Lorenz, No. 15-cv-04494-BLF, 2018 WL

23  5816180, at *3 (N.D. Cal. Nov. 5, 2018)).  The Court recognizes that there is some

24  disagreement in this district as to whether a sheriff's office is a proper defendant in a

25  §1983 case.  Compare Steel v. Alameda Cnty. Sheriff's Office, 428 F. Supp. 3d 235, 241

26  (N.D. Cal. 2019) (proper defendant); Fanaro v. Cnty. of Contra Costa, No. 3:19-cv-03247-

27  WHO, 2019 WL 5191018, at *6 (N.D. Cal. Oct. 15, 2019) (proper defendant) with Acasio

28  v. San Mateo Cnty. Sheriff's Office, No. 14-cv-04689-JSC, 2015 WL 333011, at *5 (N.D.

Cal. Jan. 23, 2015) (not a proper defendant); <u>Daniel v. Santa Rosa Junior College</u>, No. C 13-02426 JSW, 2014 WL 806432, at *7 (N.D. Cal. Feb. 27, 2014) (not a proper defendant). However, Scarlett did not dispute this point in his opposition. <u>See</u> Opp'n to MTD; Reply re MTD at 2–3. Accordingly, he conceded it. <u>See</u> <u>Vien-Phuong Thi Ho v. Recontrust Co.</u>, 669 F. App'x 857, 859 (9th Cir. 2016).[7]

### 2.  Res Judicata

Defendants next argue that the claims against Rosen, O'Neal, and Goldman are barred by <u>res judicata</u>. <u>See</u> MTD at 13–15. Collateral estoppel, or issue preclusion, "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." <u>Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.</u>, 590 U.S. 405, 411 (2020). "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." <u>Clark v. Bear Stearns & Co., Inc.</u>, 966 F.2d 1318, 1320–21 (9th Cir. 1992).

As to Rosen, Scarlett alleges that he was "subjected to an unbelievable abuse of the criminal justice system orchestrated by county district attorney Defendant Jeffrey Francis Rosen." Compl. ¶ 52. This is the same issue as in <u>Scarlett II</u>, where Scarlett alleged that Rosen "prosecut[ed]" him "for a non-crime." <u>See</u> RJN Ex 7 at 7–8. The court dismissed the complaint without leave to amend, concluding that the complaint was frivolous and failed to state a claim. RJN Ex. 8 at 1, 2. This is also the same issue as in <u>Scarlett V</u>, where Scarlett alleged that "[t]he DA, judges, county, and public defenders office all working in concert to convict on charges that were brought in bad faith and are a legal

---

[7] In his improper supplemental opposition, Scarlett acknowledged that he did not address the point but argued that that does not mean that he conceded it. Supp. Opp'n to MTD at 3. But even in that filing, he argues only that "it is premature to conclusively determine that the Sheriff's Office . . . had no independent role in the misconduct alleged." <u>Id.</u> (expressing desire to take discovery into Sheriff's Office's "precise role."). The Court's ruling on this point does not mean that the Sheriff's Office had no role in the harm that Scarlett alleges.

1   impossibility." RJN Ex. 18 at 3. The R&R concluded that the claims against Rosen "are

2   barred by the doctrine of prosecutorial immunity." RJN Ex. 19 at 10–11. Judge Freeman

3   adopted the R&R and dismissed the complaint without leave to amend. RJN Ex. 20.

4   Collateral estoppel therefore bars the claims herein against Rosen.

5          As to O'Neal, Scarlett hardly alleges anything—just that she had the highest

6   position in the Public Defender's Office. See Compl. ¶ 20. This fails to state a claim as to

7   anything, but to the extent that Scarlett alleges that O'Neal is to blame because "[t]he

8   public defender's office failed to protect Mr. Scarlett's Constitutional rights and there [sic]

9   participation in the bad faith prosecution almost cost Mr. Scarlett his life," id. ¶ 65, this

10  allegation is not new. In Scarlett IV, Scarlett alleged that O'Neal "refused to protect

11  Plaintiff's Constitutional rights." RJN Ex. 15 at 3. The Superior Court sustained an

12  unopposed demurrer, holding that Scarlett failed to state a claim. RJN Ex. 16 at 1.

13  Scarlett failed to amend, resulting in a judgment of dismissal that the Sixth Appellate

14  District affirmed. See RJN Ex. 17. In Scarlett V, Scarlett alleged that "[t]he DA, judges,

15  county, and public defenders office all working in concert to convict on charges that were

16  brought in bad faith and are a legal impossibility." RJN Ex. 18 at 3. The R&R concluded

17  that the claims against O'Neal were "exceedingly vague" and "it is not apparent that . . .

18  O'Neal acted under color of state law." RJN Ex. 19 at 8 (citing Polk Cty. v. Dodson, 454

19  U.S. 312, 325 (1981)). Judge Freeman adopted the R&R and dismissed the complaint

20  without leave to amend. RJN Ex. 20. Collateral estoppel therefore bars the claims herein

21  against O'Neal.

22         As to Goldman, Scarlett alleges that Goldman followed Scarlett out of court one

23  day after a hearing and, when Scarlett told him that he knew about meetings behind his

24  back, screamed, "WHY DON'T YOU HAVE ANOTHER HEART ATTACK AND

25  DIE!!" Id. ¶ 66. While alarming, this allegation does not state a claim against Goldman.

26  But to the extent that Scarlett holds Goldman responsible because "[t]he public defender's

27  office failed to protect Mr. Scarlett's Constitutional rights and there [sic] participation in

28  the bad faith prosecution almost cost Mr. Scarlett his life," id. ¶ 65, this allegation is not

United States District Court
Northern District of California

10

1    new.  In <u>Scarlett IV</u>, Scarlett alleged that Goldman "refused to protect Plaintiff's

2    Constitutional rights."  RJN Ex. 15 at 3.  The Superior Court sustained an unopposed

3    demurrer, holding that Scarlett failed to state a claim.  RJN Ex. 16 at 1.  Scarlett failed to

4    amend, resulting in a judgment of dismissal that the Sixth Appellate District affirmed.  <u>See</u>

5    RJN Ex. 17.  Collateral estoppel therefore bars the claims herein against Goldman.

6         Scarlett fails to respond to this argument in his opposition.  <u>See</u> Opp'n to MTD;

7    Reply re MTD at 3.  Accordingly, he concedes it.[8]

8         The Court therefore proceeds to analyze the remainder of the complaint without

9    either the Sheriff's Office, Rosen, O'Neal, or Goldman as defendants.  This leaves the

10   County of Santa Clara, Huang, Alem, and the Doe defendants.

### 3.    First Amendment Retaliation

12        Defendants next argue as to the First Amendment retaliation claim that: (a) the

13   County is not a proper defendant; (b) the claim against the individual defendants is

14   untimely and fails to state a claim.  MTD at 15–20.

### a.    County

16        Defendants argue that the County is not a proper defendant because a public entity

17   cannot be held liable under § 1983 based on <u>respondeat superior</u> liability.  MTD at 15–16

18   (citing <u>Leslie v. City of Sand City</u>, 615 F. Supp. 2d 1121, 1125 (N.D. Cal. 2009)).

19   Defendants are correct as to <u>respondeat superior</u> liability.  In order to hold a municipality

20   liable under § 1983, a plaintiff must either show that (1) the municipal employee

21   committed the constitutional violation pursuant to a municipal policy, practice, or custom;

22   (2) the employee who committed the constitutional violation was an official with "final

23   policy-making authority" and his action thus constituted official government policy; or (3)

24   an official with final policy-making authority ratified a subordinate's unconstitutional

25   action.  <u>See</u> <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 708 (1978);

26   <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

27

28   _____

[8] Scarlett's improper supplemental opposition asserts that Defendants have failed to
identify a final judgment on the merits.  <u>See</u> Supp. Opp'n to MTD at 3.  Not so.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Scarlett asserts two bases for liability.

2    First, he asserts that that "[t]he coordinated misconduct of at least four high-ranking

3    County officials over eight years supports an inference of an unlawful County policy

4    here." Opp'n to MTD at 15. He points again to his allegations of the district attorney

5    (Rosen) and public defender (O'Neal) and their offices "all unit[ing] together with the

6    improper aim of violating Mr. Scarlett's rights." Id. (citing Compl. ¶¶ 52–66, 86). And he

7    maintains that this open coordination "suggests their actions were consistent with an

8    informal custom or policy," although "the full contours of that policy cannot be known

9    without discovery." Id. at 15–16. These allegations are not fleshed out in the complaint,

10    but see Compl. ¶ 65 (alleging that the Public Defender's office "participat[ed] in the bad

11    faith prosecution"), but even if they were, they are too vague and speculative to satisfy

12    Monell. See Garcia v. Cnty. of Napa, No. 21-cv-03519-HSG, 2022 WL 110650, at *5

13    (N.D. Cal. Jan. 12 2022) ("Courts have found vague assertions of municipal policies to be

14    insufficient."). While "a single incident can serve as the basis of a Monell claim so long as

15    proof of the incident includes proof that it was caused by an existing, unconstitutional

16    municipal policy," id. (quoting Bagley v. Cty of Sunnyvale, No. 16-cv-02250-LHK, 2017

17    SL 344998, at *14 (N.D. Cal. Jan. 24, 2017)), there is no such proof alleged here.

18    Second, Scarlett asserts that Rosen ratified his office's "8-year campaign of

19    harassment" and orchestrated the campaign himself. Opp'n to MTD at 15–17. The

20    ratification theory is not in the complaint, and though the allegation that Rosen

21    orchestrated the campaign is in the complaint, see Compl. ¶ 52, it is not a basis for

22    liability. As already explained, Scarlett's claims against Rosen are barred by res judicata.

23    The allegations against Rosen are also conclusory and implausible. See Compl. ¶¶ 52, 73

24    (Rosen orchestrated eight-year "unbelievable abuse of the criminal justice system" because

25    of Scarlett's involvement in a foreclosure proceeding). Moreover, the eight-year

26    prosecution allegedly orchestrated by Rosen is not even the basis the complaint provides

27    for the First Amendment retaliation claim. See id. ¶ 86 (retaliation was Scarlett's arrest

28    and false imprisonment). Scarlett's inability to establish an underlying constitutional

violation precludes him from stating a <u>Monell</u> claim.  <u>See</u> <u>Lockett v. Cnty. of L.A.</u>, 977

F.3d 737, 741 (9th Cir. 2020) ("<u>Monell</u> claims . . . require a plaintiff to show an underlying

constitutional violation.").[9]

Scarlett therefore fails to state a First Amendment retaliation claim against the

County.

### b.    Individual Defendants

Defendants argue that the First Amendment retaliation claim as to the individual

defendants—those remaining are Huang and Alem—is untimely and fails to state a claim.

<u>See</u> MTD at 16–20.  The Court does not reach the timeliness question because it agrees

that Scarlett fails to state a claim.

Scarlett's First Amendment retaliation claim alleges that "Defendants unlawfully

retaliated against Mr. Scarlett for exercising his First Amendment rights to defend himself

in civil litigation, they conspired one with the other, arresting Scarlett causing him to be

false imprisoned held in jail to retaliate against him and to allow time for the contents of

his home to be stolen and the home boarded up."  <u>Id.</u> ¶ 86.  As with Rosen, all of the

conduct that the claim identifies as violating Scarlett's First Amendment rights—arresting

and falsely imprisoning him so that Defendants could take his home away—took place

before Huang and Alem, deputy district attorneys, were even involved.[10]  The complaint

fails to state a First Amendment retaliation claim against Huang and Alem.

Even if the allegations against Huang and Alem implicated the First Amendment

retaliation claim, Huang and Alem are entitled to absolute prosecutorial immunity for their

alleged conduct.  Absolute prosecutorial immunity immunizes a prosecutor from any

---

[9] Defendants also argue, correctly, that a district attorney acts as a state officer and not a county officer when deciding to prosecute someone—and so a § 1983 claim against a county based on a district attorney's decision to prosecute someone must fail.  <u>See</u> Reply re MTD at 4 n.2 (citing <u>Weiner v. San Diego Cnty.</u>, 210 F.3d 1025, 1031 (9th Cir. 2000)).
[10] The Court agrees with Defendants that the theory at the center of Scarlett's case, that the arrest was in retaliation for Scarlett's participation in a foreclosure action (and perhaps specifically his adding a judge as a defendant, <u>see</u> Compl. ¶ 73), is itself speculative and implausible.  <u>See</u> MTD at 19.  But this point is secondary to the point that the retaliation claim does not even involve either of the remaining individual defendants.

United States District Court
Northern District of California

monetary liability pursuant to § 1983 for actions taken in his role as a prosecutor. It "is based upon the same purpose that underlies the immunity of judges and grand jurors acting within the scope of their duties: to protect the judicial process." See Milstein v. Cooley, 257 F.3d 1004, 1007 (9th Cir. 2001). "Specifically, absolute immunity for prosecutors is warranted (1) to allow prosecutors to focus their energies on prosecuting, rather than defending lawsuits, (2) to enable prosecutors to exercise independent judgment in deciding which suits to bring and conducting them in court, (3) to preserve the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit, and (4) to ensure fairness to defendants by enabling judges to make rulings in their favor without the subconscious knowledge that such rulings could subject the prosecutor to liability." Id. Prosecutorial immunity is based on "the nature of the function performed, not the identity of the actor who performed it." Id. at 1008 (internal quotation marks and citation omitted). The official seeking immunity "bears the burden of showing that such immunity is justified for the function in question." Id. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for State, are entitled to the protections of absolute immunity." Id. (internal quotation marks and citations omitted).

The allegations involving Huang are that he yelled in court, misrepresented Scarlett's vexatious litigant status in court, met with a private attorney, laughed in court, and demanded that the judge issue an arrest warrant if Scarlett did not appear for court. Compl. ¶¶ 53–56. The allegations involving Alem are that he made improper settlement proposals, made statements to Scarlett about adding criminal charges, engaged in improper discovery conduct, lied in court, met with the judge, and attended court with "three armed men in suits." Id. ¶¶ 57, 59–62. All of these alleged actions—many of which literally took place within a judicial courtroom—are "intimately associated with the judicial phase of the criminal process." See Imbler, 424 U.S. at 430. While Scarlett responds that actions that "cast [prosecutors] in the role of an administrator or investigative officer rather than that of

14

an advocate" are not entitled to prosecutorial immunity, see Opp'n to MTD at 17 (quoting Garmon v. Cnty. of L.A., 828 F.3d 837, 843 (9th Cir. 2016)), the allegations here do not involve administrative or investigative acts.[11]  Initiating a case and presenting the state's case are entitled to prosecutorial immunity.  See Garmon, 828 F.3d at 843. "[P]rosecutorial immunity [also] extends to the process of plea bargaining as an integral part of the judicial process."  Briley v. State of Cal., 564 F.2d 849, 856 (9th Cir. 1977) (internal quotation marks omitted).  And that immunity applies even if the prosecutors' acts "violated the civil plaintiff's constitutional rights."  Broam v. Bogan, 320 F.3d 1023, 1029 (9th Cir. 2003) (collecting cases).

Because the complaint does not even implicate Huang and Alem in the First Amendment retaliation claim, and because they are both entitled to absolute prosecutorial immunity, the complaint fails to state a First Amendment retaliation claim against them.

### 4. Bane Act

Defendants next argue that Scarlett fails to state a claim under the Bane Act because (a) Scarlett failed to comply with the claim presentation requirement, and (b) even if he had, the claim is untimely.  The Court need not reach the untimeliness point because it agrees with Defendants as to the claim presentation requirement.

In California, "no suit for money damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim . . . has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board."  Cal. Gov't Code § 945.4.  A claim "shall show" certain information.  Id. § 910.  This information includes "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim," "[t]he name or names of the public

---

[11] Scarlett also argues that qualified immunity is ill-suited for resolution on a motion to dismiss.  See Opp'n to MTD at 18 (citing Keates v. Koile, 883 F.3d 1228, 1234–35 (9th Cir. 2018)).  But the issue here is absolute prosecutorial immunity, not qualified immunity.

employee or employees causing the injury, damage, or loss," and "[t]he amount claimed." Id. §§ 910(c)–(f).  Claims pertaining to personal injury "shall be presented . . . not later than six months after the accrual of the cause of action."  Id. § 911.2(a).  Failure to present a timely government claim to a public entity bars a claimant from filing suit against that entity.  Id. § 945.4.

Scarlett submitted a claim against the County on May 25, 2023.  RJN Ex. 21.  The claim stated that Scarlett "was subjected to a False Arrest on 2/11/2015 at his home of 32 years" and that the arrest "was the result of DA Rosen's office fabricating a crime from Scarlett's exercising his constitutional rights, extort/threaten Scarlett to drop civil lawsuit for his home."  Id. at 1.  As an initial matter, the facts in that claim are consistent with the Bane Act claim in the complaint.  See Compl. ¶ 95 ("Defendants intentionally interfered with Mr. Scarlett's right . . . to be free from warrantless arrest without probable cause. Defendants used threats and force to effect Mr. Scarlett's unlawful arrest, and Mr. Scarlett reasonably believed that defendants would commit violence against him if he did not physically submit to the unlawful arrest.").  However, neither the claim presented nor the claim as alleged in the complaint involve the prosecution of Scarlett after his arrest, and so neither involve Huang or Alem.  The Bane Act claim fails to state a claim as to Huang and Alem on that basis alone.

Defendants' main point about the claim presentation requirement is that Scarlett was required to submit his claim "not later than six months after the accrual of the cause of action," and that Scarlett's May 25, 2023 claim came more than eight years after his February 11, 2015 arrest.  MTD at 20–21.  "The failure to [present a timely claim] bars the plaintiff from bringing suit against that entity."  Coble v. Ventura Cnty. Health Agency, 73 Cal. App. 5th 417, 421 (2021).  Scarlett's Bane Act claim, which is entirely about his arrest, accrued at the time of his arrest; it is therefore more than six months late.  Nor is there any indication that Scarlett applied for leave to present a late claim.  See RJN Ex. 22 (government returned Scarlett's claim, stating in part that Scarlett's recourse was "to apply without delay to [the County] for leave to present a late claim."  Id. (citing Gov't Code §§

911.4–912.2, 946.6)).

That Scarlett failed to comply with the claim presentation requirement means not only that he has failed to state a claim against the County but also against Huang and Alem.  "[A] cause of action against a public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred." Cal. Gov't Code § 950.2; see also Inman v. Anderson, 294 F. Supp. 3d 907, 925 (N.D. Cal. 2018) (dismissing Bane Act claim against county based on claim presentation requirement and then dismissing public employee).

Scarlett does not respond to Defendants' arguments about the Bane Act claim in his opposition.  See Opp'n; Reply at 6.  Accordingly, he concedes them.[12]  Scarlett fails to state a Bane Act claim against the County, Huang, or Alem.

### 5.    Claims against Doe Defendants

Defendants next note that Scarlett brings his Fourth Amendment and false arrest/imprisonment claims only against Doe defendants, and they argue that the Court should dismiss these claims, too.  MTD at 23–24 (citing Compl. ¶¶ 80–84).  Defendants opine that it is implausible that "nearly nine years after his February 2015 arrest that prompted 'almost 8 years' of litigation . . . Plaintiff is still unaware of the identities of the individuals" responsible.  Id. at 23.  And they reason that in any case, "Plaintiff cannot proceed solely against Doe defendants—not least because the lack of identifying information precludes service of process."  Id. at 23–24 (citing Martin v. W. Cnty. Detention Facility Does 1–3, No. 21-cv-02180-HSG, 2021 WL 2115337, at *1 (N.D. Cal. May 25, 2021) ("This action cannot proceed solely against Doe defendants"); Hatcher v. Ahern, No. C 07-5779 SI (pr), 2009 WL 188839, at *1 (N.D. Cal. Jan. 26, 2009) ("plaintiff

---

[12] Scarlett's improper supplemental opposition argues that his Bane Act claim should not be dismissed as untimely because "Defendants' misconduct prevented him from discovering the full scope of his claims."  Supp. Opp'n to MTD at 4.  Scarlett does not address the claim presentation requirement.  See id.  Nor does he explain how Defendants' misconduct prevented him from understanding that his arrest was unlawful, particularly as he brought several earlier lawsuits arguing that his arrest was unlawful.

17

1    had to identify the Doe defendants . . . and the case could not go forward until he did so.");

2    other cases).

3        Scarlett does not respond to Defendants' arguments about the Doe defendants in his

4    opposition. <u>See</u> Opp'n; Reply at 6–7. Accordingly, he concedes them.[13] The claims

5    against the Doe defendants fail.

6                 **6.**       **Punitive Damages against the County**

7        Defendants next argue that the Court should dismiss the punitive damages against

8    the County. MTD at 24–25 (citing <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247,

9    271 (1981)). Scarlett does not respond to this argument in his opposition. <u>See</u> Opp'n;

10   Reply at 7. The Court need not reach this point as this order dismisses the County

11   altogether.

12                **7.**       **Leave to Amend**

13        Finally, Defendants argue that the Court should not grant leave to amend on this

14   "sixth lawsuit on the same general factual allegations." MTD at 25. They assert that

15   Scarlett will not be able to amend around the problems with his First Amendment

16   retaliation claim or his Bane Act claim, either as to the County or the Individual

17   Defendants. <u>Id.</u> Scarlett responds that dismissal with prejudice would "directly contradict

18   Judge Koh's order" in <u>Scarlett III</u>, which allowed him to "bring suit and seek relief for any

19   alleged violations of his Fourth Amendment and due process rights" following the

20   conclusion of his criminal case. Opp'n at 14–15 (quoting RJN Ex. 13 at 10).

21        Denying leave to amend would not conflict with Judge Koh's order. That order—in

22   a case Scarlett brought only against Alem—dismissed <u>Scarlett III</u> without prejudice based

23   on <u>Younger</u> abstention, allowing Scarlett to come back to court and file a Fourth

24   Amendment and due process claim. RJN Ex. 13. Scarlett has come back to court—in fact

25   he came back to court two times between Judge Koh's dismissal and now, in <u>Scarlett IV</u>

26

27    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [13] Scarlett's improper supplemental opposition argues that "The claims against Doe
   defendants should survive if claims against named defendants do." Supp. Opp'n to MTD

28   at 4. But the Court does not conclude that any claims against the named defendants
   survive.

<div style="writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

(in 2019) and <u>Scarlett V</u> (in 2022)—and he has sued Alem.  The Court is not dismissing the claims against Alem because Scarlett has sued him previously.  Scarlett could have brought suit against Alem for Fourth Amendment and due process violations and chose not to do so.  Judge Koh's order does not mean that Scarlett can sue any defendants he likes, and bring any claims that he likes, and that he can continue to amend or bring new suits ad nauseum.

The Court agrees with Defendants that Scarlett will not be able to plead around the bases for dismissal of his First Amendment retaliation or Bane Act claims.  Amendment would be futile.  <u>See</u> <u>Leadsinger</u>, 512 F.3d at 532 (9th Cir. 2008) (cleaned up).  Moreover, Scarlett has now had six bites at the apple—he is not entitled to a seventh.  Accordingly, dismissal will be with prejudice.

## B.    Motion for Prefiling Order

In a separate motion, Defendants detail the five previous suits that Scarlett has brought and argue that the Court should enter a prefiling order deeming Scarlett a vexatious litigant and barring him from bringing a federal suit

> against Defendants, or any other County employee or contractor, relating to: (1) the foreclosure or disposition of the real property located at 6215 Drifter Drive in San José, California; (2) Plaintiff's arrest in February 2015 that prompted charges in <u>People v. Scarlett</u>, No. C1503585 (Superior Court for the County of Santa Clara); (3) the criminal prosecution in <u>People v. Scarlett</u>, No. C1503585 (Superior Court for the County of Santa Clara), or the criminal defense Plaintiff received therein; or (4) the Office of the County Counsel's civil defense relating to Scarlett I, II, III, IV, V, and/or VI, or any appeals taken therefrom.

Mot. re Vex. Litigant at 2.  Scarlett responds that "[i]t is not Mr. Scarlett who has abused the litigation process, but Defendants themselves."  Opp'n to Mot. re Vex. Litigant at 2.  He asserts: "The defendants' motion essentially asks: How dare Mr. Scarlett rise to defend himself?  How dare he appeal to a higher court to stop a malicious prosecution?  How dare he fight an illegal foreclosure on his home of 32 years?"  Id.

Scarlett's characterization is incorrect.  His criminal trial is over, and this civil

litigation is not a way for him "to defend himself." The prosecution has stopped; he need not ask this Court "to stop" it. And this litigation is not a means of "fight[ing] an illegal foreclosure." Nonetheless, the Court will not grant Defendants' motion at this point. Scarlett understood Judge Koh's order as granting him permission to return to federal court and bring suit following the conclusion of his criminal prosecution. See id. at 3. He did so through this case. While the complaint in this case failed to state a claim, and swept in a number of improper defendants, the Court cannot say that it was frivolous and harassing given the context. Accordingly, Defendants have not met their burden under De Long, 912 F.2d at 1147–48.

The Motion for a Prefiling Order is DENIED. The Court cautions Scarlett that—unlike Judge Koh's dismissal without prejudice—this Court's dismissal with prejudice means that he may not come back and refile his claims. Should he do so, then Defendants would be on firmer ground in requesting a prefiling order.

## IV.    CONCUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss with prejudice and DENIES the motion for a prefiling order.

**IT IS SO ORDERED.**

Dated: November 15, 2024

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California